# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| U.S.A. DAWGS, INC., et al., | Case No. 2:16-CV-1694 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| CROCS, INC., | |
| Defendant(s). | |

Presently before the court is defendant Crocs, Inc.'s ("Crocs") motion for sanctions. (ECF No. 29). Plaintiffs Double Diamond Distribution, Ltd. ("DDD") and U.S.A. Dawgs, Inc. ("Dawgs") filed a response (ECF No. 38), to which defendant replied (ECF No. 39).

Previously before the court was defendant Crocs' motion to dismiss.[1] (ECF No. 6). Notably, plaintiffs filed a response (ECF No. 12) and discovery plan (ECF No. 17). Thereafter, plaintiffs filed separate notices of voluntary dismissal without prejudice. (ECF Nos. 22, 27).

**I.  Facts**

Crocs and Dawgs have been in an ongoing legal battle in the Colorado courts since 2006. (ECF No. 29 at 3). Crocs filed its Colorado suit in 2006, and the action was generally stayed from 2006 to 2012. (*Id.*). During a brief reopening in 2012, Crocs named a Dawgs' entity "as a defendant and Dawgs asserted counterclaims" against Crocs.[2] (*Id.*). The parties agreed to stay that suit again in 2012. (*Id.*).

---

[1] Also before the court is defendant's request for judicial notice that the United States District Court for the District of Colorado granted Crocs' motion to amend its complaint in that case to include the patent at issue in this action. (ECF No. 40).

[2] In 2006, defendants not in this action moved "to stay [the Colorado] case pending proceedings under Section 337 of the Tariff Act of 1930 before the International Trade Commission [('ITC')]. The [Colorado] court granted the motion on May 16, 2006, and

In 2014, Dawgs "filed an antitrust action against Crocs in the District of Nevada" before Judge Boulware. *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 2:14-CV-01461-RFB-PAL, 2015 WL 5765966, at *2 (D. Nev. Sept. 30, 2015); (ECF No. 12 at 5). That Nevada court transferred that action to Colorado because the antitrust claims "substantial[ly] overlap[ped]" with existing patent claims in the first filed Colorado action, supporting transfer under the *Kohn* factors. *U.S.A. Dawgs*, 2015 WL 5765966, at *2; *see also Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015).

In early 2016, the Colorado court granted Dawgs' motion to reopen that suit. (ECF No. 29 at 4).

On June 10, 2016, with its Colorado suit pending, Crocs filed suit against CVS Health Corporation ("CVS") in the United States District Court for the Southern District of Florida.[3] (ECF No. 40-1 at 2). The Florida complaint alleged that CVS sold footwear that infringed on the U.S. Patent No. D 632,465 (the "'465 patent"). (ECF No. 38 at 4). It was the first reference to the '465 patent in any of the relevant Colorado, Florida, or Nevada cases. (*Id.*).

"On June 28, 2016, Crocs filed its motion for leave to file its second amended complaint [in Colorado], the effect of which would be to add an additional claim against Dawgs for infringement of the '465 patent." (ECF No. 40-1 at 3).

Following Crocs' motion to amend in Colorado, Dawgs filed a declaratory judgment action with this court on July 18, 2016. (ECF No. 29 at 2). In this Nevada action, Dawgs asked the court to adjudicate the "(1) validity of the '465 patent, and (2) whether Dawgs' shoes infringe the '465 patent." (*Id.* at 4). Dawgs purportedly filed the suit in Nevada to avoid the "substantial hardship" of litigating in another district.[4] (*Id.*).

On August 2, 2016, in Colorado, Crocs argued in its reply in support of its motion for leave to amend that Dawgs' Nevada filing was anticipatory and improper, but both suits remained open. (*Id.* at 5).

---

administratively closed the case." (ECF No. 40-1 at 2–3). Crocs won in the ITC "with a finding that the 'Dawgs' clog infringed both the '858 and '789 [p]atents." (ECF No. 29 at 3).

[3] Dawgs supplies CVS with the contested footwear.

[4] Dawgs' principal place of business is in Las Vegas, Nevada. (ECF No. 29 at 4).

James C. Mahan
U.S. District Judge

- 2 -

Thereafter, Crocs filed its motion to dismiss the instant action on September 2, 2016. (*Id.*). Crocs' Nevada motion to dismiss also asserted that the underlying suit was anticipatory and improper. (ECF No. 6).

Three days before filing its response to the Nevada motion to dismiss, Dawgs' attorney sent an email to Crocs proposing that the parties agree to transfer the suit to Colorado. (ECF No. 12-2 at 2). Dawgs' counsel suggested it wished to transfer this Nevada suit to Colorado and proposed that Crocs agree to request specific judges in Colorado. (*Id.*). Crocs did not respond because Dawgs' offer would have purportedly forced Crocs to "forfeit its right to litigate the '465 patent alongside its other patents." (ECF No. 16 at 7). On September 16, 2016, Dawgs filed a response to Crocs' Nevada motion to dismiss. (ECF No. 12).

On October 6, 2016, a Colorado magistrate judge recommended denying Crocs' motion to amend, reasoning that granting the motion might prejudice Dawgs in its pending motion for declaratory judgment filed in Nevada. *See* (ECF No. 40-1 at 4).

Dawgs submitted a proposed discovery plan for the Nevada suit on October 17, 2016, and Crocs filed a motion to stay a week later. (ECF Nos. 17, 18). However, on November 7, 2016, Dawgs filed a notice of voluntary dismissal for the underlying suit. (ECF No. 22 at 1). Dawgs sought to intervene in the Florida case, which forced it to dismiss the Nevada suit for declaratory judgment. (ECF No. 38 at 4–5).[5] This court closed the underlying suit on December 6, 2016. (ECF No. 27).

Also in November 2016, Dawgs withdrew its opposition to Crocs' Colorado motion to amend that complaint. (ECF No. 38 at 4). On January 27, 2017, that court issued an order granting Crocs' motion for leave to file a second amended complaint to include the '465 patent, reasoning that circumstances had changed in light of the Nevada dismissal. (ECF No. 40-1 at 5).

On December 20, 2016, defendant Crocs filed the present motion for sanctions under either 28 U.S.C. § 1927 or the court's inherent powers, alleging that plaintiffs Dawgs and DDD filed the instant declaratory judgment action in bad faith. (ECF No. 29).

---

[5] Dawgs' co-plaintiff, DDD, filed its notice of voluntary dismissal one month later. (ECF No. 27).

**James C. Mahan**
**U.S. District Judge**

- 3 -

Crocs asserts the action was anticipatory and "vexatiously" multiplied court proceedings. (*Id.* at 10). Crocs requests $12,219.01 in attorneys' fees and $750.00 in *pro hac vice* filing fees. (ECF No. 29-1).

**II.     Legal Standards and Discussion**

   *A. Sanction for attorneys' fees*

      *1.   Legal standard under 28 U.S.C. § 1927*

Under Section 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.[6]

"The Ninth Circuit conducts a subjective inquiry into the viability of § 1927 sanctions; while knowing or reckless litigation conduct is sanctionable, merely negligent conduct is not." *Ruiz v. APCO Const.*, No. 2:10-CV-1312-JAD-GWF, 2014 WL 4402379, at *1 (D. Nev. Sept. 5, 2014) (citations omitted); *see also In re Keegan Management Co.*, 78 F.3d 431, 436 (9th Cir. 1996).[7] Prior to issuing an attorney fee award under § 1927, a district court must make a finding of subjective bad faith. *Keegan*, 78 F.3d at 436.

"Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) ("*Blas*").

Section 1927 sanctions are only available "once a lawsuit has begun," and do not apply to an initial pleading. *Keegan*, 78 F.3d at 435. Moreover, district courts are entitled to "substantial leeway" when deciding whether sanctions are warranted pursuant to § 1927. *Haynes v. City & Cty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012); *see also Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).

---

[6] Federal Rule of Civil Procedure 54(d)(2) allows a party to seek attorney fees by "specify[ing] the judgment and the statute, rule, or other grounds entitling the movant to the award."

[7] "Regional circuit law applies to determining whether sanctions are warranted in a patent case when the issue is not unique to the Federal Circuit's exclusive jurisdiction." *JS Prod., Inc. v. Kabo Tool Co.*, No. 2:11-CV-01856-RCJ-GW, 2014 WL 7336063, at *6 n.3 (D. Nev. Dec. 22, 2014) (citing *Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004)).

### *2. Discussion under 28 U.S.C. § 1927*

Defendant alleges that plaintiffs acted in bad faith when they filed and continued to litigate their Nevada motion for declaratory judgment of non-infringement of the '465 patent. (ECF No. 29 at 2). Defendant asserts the instant action was anticipatory because plaintiffs filed the Nevada suit after Crocs requested leave to amend its Colorado complaint to include the '465 patent. (*Id.*). Plaintiffs counter that the action was not filed in bad faith here because Crocs first included the '465 patent in the Florida suit, as opposed to the Colorado suit. (ECF No. 38 at 8). Additionally, plaintiffs point to a Colorado magistrate judge's recommendation that Crocs' motion to amend be denied, holding the "'465 patent was not related to the issues in the Colorado action." (ECF No. 38 at 5).

One type of bad-faith filing is an anticipatory suit. *Alaris Med. Sys. Inc. v. Filtertek Inc.*, No. CIV. 00-CV-2404-LAJB, 2001 WL 34053241, at *2 (S.D. Cal. Dec. 20, 2001); *see also Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 627–28 (9th Cir. 1991). A suit is anticipatory, for example, if the plaintiff in the first-filed action began the case after receipt of "specific, concrete indications that a suit by the defendant was imminent." *Williams v. Am. Mastiff Breeders Council*, 308-CV-336-ECR-VPC, 2009 WL 634231, at *3 (D. Nev. Mar. 6, 2009) (citation omitted). Indeed, anticipatory suits are considered bad faith filings because "the plaintiff should not be deprived of its traditional choice of forum because a defendant with notice of an impending suit first files a declaratory relief action over the same issue in another forum." *British Telecomm. PLC v. McDonnell Douglas Corp.*, No. C-93-0677 MHP, 1993 WL 149860, at *3 (N.D. Cal. May 3, 1993).

Dawgs' filing for declaratory judgment in this court was anticipatory because Dawgs filed suit ten days after Crocs filed a motion to amend the Colorado action to include the '465 patent. (ECF No. 29 at 2). Unlike in *Williams*, where plaintiffs' filing was anticipatory because defendant sent a letter threatening litigation, Crocs' motion to amend would have—or did—alert the instant plaintiffs to this impending claim. *See Williams*, 2009 WL 634231, at *4; (ECF No. 29 at 4). Thus, plaintiffs had specific knowledge that the Colorado courts would at least consider defendant's motion to amend. (*Id.*). Dawgs also knew a judge in this district had previously

transferred its antitrust claim against Crocs to Colorado. *See U.S.A. Dawgs, Inc. v. Crocs, Inc.*, 2:14-cv-1461-RFB-PAL, 2015 WL 5765966, at *2; (ECF No. 29 at 4). In light of these facts, plaintiffs' filing was anticipatory and done in bad faith. *See Williams*, 2009 WL 634231, at *4.

However, § 1927 does not provide sanctions for *initial filings* made in bad faith.[8] 28 U.S.C. § 1927; *see also Blas*, 792 F.2d at 860 ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument . . . or argues a meritorious claim for the purpose of harassing an opponent."). Even though it was anticipatory, plaintiffs may not be sanctioned under § 1927 for merely filing their Nevada declaratory judgment action because it was the initial filing in this action. *See Blas*, 792 F.2d at 860. Yet, they may be sanctioned under § 1927 for actions taken subsequent to filing that multiplied the proceedings "unreasonably and vexatiously." *Id.*

Here, it appears that plaintiffs submitted their initial filing with this court as a bargaining chip, especially considering plaintiffs' communication to Crocs wherein Dawgs' attorney seemed to offer to withdraw this suit while asking Crocs to agree to request specific judges in its Colorado motion.[9] (ECF No. 12-2 at 2). Plaintiffs subsequently filed a response in Nevada to defendant's motion to dismiss and filed a plan for discovery, both of which are sanctionable because they vexatiously multiplied litigation. *See China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, No. CV 02-5493 LGB JWJX, 2003 WL 21982477, at *13 (C.D. Cal. Mar. 12, 2003) ("[T]he [c]ourt concludes that in opposing [p]laintiff's motion to dismiss or transfer the New York Action, [d]efendant knowingly raised a frivolous argument. Such conduct subjects [d]efendant to sanctions under 28 U.S.C. § 1927.").

. . .

. . .

. . .

. . .

---

[8] Sanctions for bad faith filings are appropriate under Rule 11. *See* Fed. R. Civ. P. 11. Rule 11 uses an objective standard for imposing sanctions, while the standard under § 1927 is subjective. *Compare Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993), *with Keegan*, 78 F.3d at 436.

[9] Dawgs accuses Crocs of attempting to avoid Magistrate Judge Tafoya. (ECF No. 12-2 at 2). Magistrate Judge Tafoya presided over portions of the Colorado action before and after Crocs submitted their relevant motion to amend. (ECF No. 40-1 at 3).

James C. Mahan
U.S. District Judge

### *3. Legal standard under Local Rule 54-14*

Federal Rule of Civil Procedure 54(d)(2)(E) specifically exempts claims for sanctions under § 1927 from Rule 54 motions. Thus, a question exists as to whether this court may apply its local rules in considering relief.

Courts must "construe local rules so that they do not conflict with the federal rules." *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995). If a local rule conflicts with a federal rule, the local rule "cannot be enforced." *Pradier v. Elespuru*, 641 F.2d 808, 810 (9th Cir. 1981).

Local Rule 54-14(b) states that "[u]nless the court orders otherwise, a motion for attorney's fees must include [certain criteria] in addition to those matters required by Fed. R. Civ. P. 54(d)(2)(B)." Because Rule 54(d)(2)(B) does not apply to § 1927 claims, this court must compare LR 54-14 to § 1927 to determine if the local rule and statute conflict.

Section 1927 sanctions are appropriate when an attorney multiplied "the proceedings in any case unreasonably and vexatiously," but the statute does not address a motion's form or substance. *Cf. Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 674–75 (9th Cir. 1975), *abrogated on other grounds by Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004). Indeed, § 1927 sets a standard for relief; however, Local Rule 54-14 sets a procedure for relief. *Compare* 28 U.S.C. § 1927, *with* LR 54-14.

The local rule does not restrict the federal statute but rather dictates a motion's content. *See* LR 54-14. Consequently, the rule and statute do not directly conflict, and this court will apply both when evaluating Crocs' motion for sanctions because the requested relief is attorneys' fees. *But cf. Home Gambling Network, Inc. v. Piche*, No. 2:05-CV-610-DAE, 2015 WL 1734928, at *19 (D. Nev. Apr. 16, 2015) (refusing to apply Local Rule 54-14 in a motion for sanctions because the rule contains a time restriction, unlike § 1927).

Local Rule 54-14(b)(3) specifically identifies the information that a party must submit to a trial court in this district for the court's consideration of a motion for attorneys' fees. These thirteen items are as follows:

> (A) The results obtained and the amount involved; (B) The time and labor required; (C) The novelty and difficulty of the questions involved; (D) The skill requisite to perform the legal service properly; (E) The preclusion of other employment by the attorney due to acceptance of the case; (F) The customary fee; (G) Whether the fee

is fixed or contingent; (H) The time limitations imposed by the client or the circumstances; (I) The experience, reputation, and ability of the attorney(s); (J) The undesirability of the case, if any; (K) The nature and length of the professional relationship with the client; (L) Awards in similar cases; and (M) Any other information the court may request.

LR 54-14(b)(3).

Information regarding reasonable attorney's fees is based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.* "The district court . . . should exclude from this initial fee calculation hours that were 'not reasonably expended.'" *Id.* at 433–34. Thus, the "court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Bus. Factors, Inc.*, 897 F. Supp. 458, 460–61 (D. Nev. 1995).

After calculating the lodestar amount, the court can further adjust that figure by considering the factors laid out in *Kerr*, which materially mirror Local Rule 54-14. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016); LR 54-14.

### 4. *Attorneys' fees calculation*

Defendant requests attorneys' fees in the amount of $12,219.01 for the work done by three associates that prepared Crocs' motion to dismiss, its reply, and its motion to stay discovery. (ECF Nos. 29 at 11, 29-1).

The hourly rates for defendant's counsel, Mr. Callagy, Ms. Palanjian, and Mr. Langendorf, are $490, $497.20, and $535.50, respectively. (ECF No. 29-1 at 3–4). Defendant seeks to recover fees for 4.4 hours of Mr. Callagy's time, 11.3 hours of Ms. Palanjian's time, and 8.3 hours of Mr. Langendorf's time. (*Id.*).

These attorneys are all based in San Francisco, but the district court should calculate the attorneys' reasonable hourly rate "according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984); *see also Mirch v. Frank*, 266 Fed. Appx. 586, 588 (9th Cir. 2008) ("Reasonableness is the benchmark for [§ 1927] sanctions based on

James C. Mahan
U.S. District Judge

- 8 -

attorneys' fees."); *Avera v. Sec'y of Health & Human Services*, 515 F.3d 1343, 1348 (Fed. Cir. 2008) ("[C]ourts of appeals have uniformly concluded that, in general, forum rates should be used to calculate attorneys' fee awards under other fee-shifting statutes."); *Home Gambling Network*, 2015 WL 1734928, at *10 (applying Nevada market rates "to calculate awards under fee-shifting statutes," including § 1927).

Here, the movant has failed to satisfy Local Rule 54-14(b)(3) because defendant's request for attorneys' fees insufficiently discusses "[t]he customary fee" and "awards in similar cases." LR 54-14(b)(3)(F), (L). The court requires additional information under Local Rule 54-14(b)(3) to fairly determine an appropriate fee in this case. *See Branch Banking and Trust Company v. Jones/Windmill, LLC, et al.*, 2:12-cv-452-JCM-GWF, 2017 WL 520547, at *3 (D. Nev. Feb. 7, 2017) (discussing this court's obligation to scrutinize requests for attorneys' fees, which is aided by a party's provision of the content required by Local Rule 54-14(b)(3)).

Therefore, defendant's failure to comply with Local Rule 54-14(b)(3) impairs the court's performance of its obligation to scrutinize attorney fees payable. Thus, this court holds that sanctions are warranted under § 1927, but it faces inadequate information to determine a reasonable sanction at this time.

### 5. Legal standard: Court's inherent authority

"In some circumstances, this court may in the exercise of its inherent powers assess attorney's fees against counsel." *Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1561 (D. Nev. 1997). The court's inherent powers permit it to award attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive purposes." *Chambers v. NASCO*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). Bad faith is present when "a litigant is substantially motivated by vindictiveness, obduracy, or mala fides," even if the litigants raised a colorable claim. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (quoting *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980)).

These inherent powers are generally not affected by other statutory authority to shift attorneys' fees. *Chambers*, 501 U.S. at 46–50 ("We discern no basis for holding that the

sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct."). However, "sanctions under the court's inherent authority provide[] for the same degree of wrongful conduct as that applied with respect to § 1927." *Calgene, Inc. v. Enzo Biochem, Inc.*, No. CIVS-93-0195(EJGGGH), 1993 WL 645999, at *4 (E.D. Cal. Aug. 27, 1993). Thus, there is no need for a duplicative analysis here. *See id.* (declining to conduct a similarly redundant analysis).

### B. Costs

Defendant also requests compensation for costs incurred by Crocs' submission of verified petitions for permission to practice *pro hac vice*. (ECF No. 29-1 at 5). Defendant requests $750, "reflecting a filing fee of $250 for each attorney." (*Id.*).

#### 1. Legal standard

Under Federal Rule of Civil Procedure 54(d)(1), "unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."[10]

Costs are not synonymous with expenses. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012). "Expenses" include all expenditures made during the course of litigation, but "costs" are limited to those expenditures listed in 28 U.S.C. § 1920. *Id.* Section 1920 lists items such as clerk fees, court reporter fees, and expenses for printing and witnesses. 28 U.S.C. § 1920.

Indeed, Ninth Circuit Court of Appeals held "that [§] 1920(1) does not allow for an award of *pro hac vice* fees as taxable costs." *Kalitta Air L.L.C. v. Central Texas Airborne System, Inc.*, 741 F.3d 955, 958 (9th Cir. 2013).

#### 2. Analysis

In defendant's motion for sanctions, it requested compensation for costs from its *pro hac vice* filings. (ECF No. 29 at 10). Precedent makes clear that awards for taxable costs do not

---

[10] Plaintiffs voluntarily dismissed their declaratory judgment action in this court. (ECF Nos. 22, 27).

include any costs from *pro hac vice* filings. *See JS Products*, 2014 WL 7336063, at *8–9. Defendant's request for costs is therefore denied with prejudice.

**III.      Conclusion**

In sum, the present motion for sanctions will be denied in its current form.

Defendant's request for costs will be denied with prejudice because this court does not award costs for *pro hac vice* filings.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the present motion for sanctions (ECF No. 29) be, and the same hereby is, DENIED, pursuant to the foregoing.

DATED August 2, 2017.

_____
UNITED STATES DISTRICT JUDGE