UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| U.S.A. DAWGS, INC., | Case No. 2:16-CV-1694 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| CROCS, INC., et al., | |
| Defendant(s). | |

Presently before the court is defendant Crocs, Inc.'s ("Crocs") renewed motion for sanctions. (ECF No. 59). Plaintiffs U.S.A. Dawgs, Inc. ("Dawgs") and Double Diamond Distribution, Ltd. ("DDD") (collectively, "plaintiffs") have not filed a response, and the time to do so has passed.[1] Nevertheless, Crocs filed a reply. (ECF No. 61). Crocs also filed a supplemental brief in support of its motion, as directed by the court. (ECF Nos. 64, 65).

**I.  Background**

Crocs and Dawgs have been in an ongoing legal battle in the Colorado courts since 2006. (ECF No. 29 at 3). Crocs filed its Colorado suit in 2006, and the action was generally stayed from 2006 to 2012. *Id.* During a brief reopening in 2012, Crocs named a Dawgs' entity "as a defendant and Dawgs asserted counterclaims" against Crocs. *Id.* The parties agreed to stay that suit again in 2012. *Id.*

In 2014, Dawgs "filed an antitrust action against Crocs in the District of Nevada" before Judge Boulware. *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 2:14-CV-01461-RFB-PAL, 2015 WL 5765966, at *2 (D. Nev. Sept. 30, 2015); (ECF No. 12 at 5). That Nevada court transferred the

---

[1] Plaintiffs filed a joint response to Crocs' first motion for sanctions (ECF No. 38), to which Crocs replied (ECF No. 39).

**James C. Mahan**
**U.S. District Judge**

2014 action to Colorado because the antitrust claims "substantial[ly] overlap[ped]" with existing patent claims in the first filed Colorado action, supporting transfer under the *Kohn* factors. *U.S.A. Dawgs*, 2015 WL 5765966, at *2; *see also Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015).

In early 2016, the Colorado court granted Dawgs' motion to reopen that suit. (ECF No. 29 at 4). On June 10, 2016, with its Colorado suit pending, Crocs filed suit against CVS Health Corporation ("CVS") in the United States District Court for the Southern District of Florida. (ECF No. 40-1 at 2). The Florida complaint alleged that CVS sold footwear that infringed on the U.S. Patent No. D 632,465 (the "'465 patent"). (ECF No. 38 at 4). It was the first reference to the '465 patent in any of the relevant Colorado, Florida, or Nevada cases. *Id.*

"On June 28, 2016, Crocs filed its motion for leave to file its second amended complaint [in Colorado], the effect of which would be to add an additional claim against Dawgs for infringement of the '465 patent." (ECF No. 40-1 at 3).

Following Crocs' motion to amend in Colorado, Dawgs filed a declaratory judgment action with this court on July 18, 2016. (ECF No. 29 at 2). In this Nevada action, Dawgs asked the court to adjudicate the "(1) validity of the '465 patent, and (2) whether Dawgs' shoes infringe the '465 patent." *Id.* at 4. Dawgs purportedly filed the suit in Nevada to avoid the "substantial hardship" of litigating in another district. *Id.*

On August 2, 2016, in Colorado, Crocs argued in its reply in support of its motion for leave to amend that Dawgs' Nevada filing was anticipatory and improper, but both suits remained open. *Id.* at 5. Thereafter, Crocs filed its motion to dismiss the instant action on September 2, 2016. *Id.* Crocs' Nevada motion to dismiss also asserted that the underlying suit was anticipatory and improper. (ECF No. 6).

Three days before filing its response to the Nevada motion to dismiss, Dawgs' attorney sent an email to Crocs proposing that the parties agree to transfer the suit to Colorado. (ECF No. 12-2 at 2). Dawgs' counsel suggested it wished to transfer this Nevada suit to Colorado and proposed that Crocs agree to request specific judges in Colorado. *Id.* Crocs did not respond because Dawgs' offer would have purportedly forced Crocs to "forfeit its right to litigate the '465

1  patent alongside its other patents." (ECF No. 16 at 7). On September 16, 2016, Dawgs filed a
2  response to Crocs' Nevada motion to dismiss. (ECF No. 12).

3  On October 6, 2016, a Colorado magistrate judge recommended denying Crocs' motion to
4  amend, reasoning that granting the motion might prejudice Dawgs in its pending motion for
5  declaratory judgment filed in Nevada. *See* (ECF No. 40-1 at 4).

6  Dawgs submitted a proposed discovery plan for the Nevada suit on October 17, 2016, and
7  Crocs filed a motion to stay a week later. (ECF Nos. 17, 18). However, on November 7, 2016,
8  Dawgs filed a notice of voluntary dismissal for the underlying suit. (ECF No. 22 at 1). Dawgs
9  sought to intervene in the Florida case, which forced it to dismiss the Nevada suit for declaratory
10  judgment. (ECF No. 38 at 4–5). This court closed the underlying suit on December 6, 2016. (ECF
11  No. 27).

12  On December 20, 2016, defendant Crocs filed its first motion for sanctions (in the form of
13  attorneys' fees) under either 28 U.S.C. § 1927 or the court's inherent powers, alleging that
14  plaintiffs Dawgs and DDD filed the instant declaratory judgment action in bad faith. (ECF No.
15  29).

16  On August 2, 2017, the court denied Crocs' motion on the grounds that Crocs had failed to
17  provide information related to two essential factors of the "lodestar" test, which the court must
18  utilize to rule on Local Rule 54-14(b)(3) motions for sanctions requesting attorneys' fees.[2] (ECF
19  No. 41 at 9).

20  On August 9, 2017, Crocs filed a motion for leave to supplement its motion for sanctions
21  to provide the missing discussion. (ECF No. 42). Before the court ruled on Crocs' motion for
22  leave to supplement its motion, Dawgs filed a notice of bankruptcy. (ECF No. 56). As a result,
23  the court stayed this action pending termination of Dawgs' bankruptcy proceeding. (ECF No. 57).
24  In the same order, the court denied Crocs' motion for sanctions without prejudice to allow Crocs
25  the opportunity to renew its motion once the stay had been lifted. *Id.*

---

[2] The court also declined to order sanctions pursuant to "the court's inherent authority." (ECF No. 41).

**James C. Mahan**
**U.S. District Judge**

On July 3, 2018, the bankruptcy court issued an order in Dawgs' bankruptcy action wherein it determined that the automatic stay does not apply to this court's adjudicating Crocs' motion for sanctions in the instant action. (ECF No. 58 at 6–9). On the same day, Crocs filed the instant "notice of lifting of stay and request to renew motion for sanctions." (ECF No. 59).

However, upon reviewing the renewed motion and supporting documents, the court found that Crocs had again failed to discuss all of the necessary "lodestar"/Rule 54-14 factors. Accordingly, on January 18, 2019, the court ordered Crocs to file a supplemental brief fully addressing the thirteen-factor "lodestar"/Rule 54-14 analysis. (ECF No. 63). In response to the court's order, Crocs filed its supplemental brief on February 1, 2019. (ECF Nos. 64, 65). The court now considers the underlying motion for attorneys' fees.

**II.     Legal Standard**

*a.    28 U.S.C. § 1927*

Under Section 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"The Ninth Circuit conducts a subjective inquiry into the viability of § 1927 sanctions; while knowing or reckless litigation conduct is sanctionable, merely negligent conduct is not." *Ruiz v. APCO Const*., No. 2:10-CV-1312-JAD-GWF, 2014 WL 4402379, at *1 (D. Nev. Sept. 5, 2014) (citations omitted); *see also In re Keegan Management Co*., 78 F.3d 431, 436 (9th Cir. 1996). Prior to issuing an attorney fee award under § 1927, a district court must make a finding of subjective bad faith. *Keegan*, 78 F.3d at 436.

"Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) ("*Blas*").

Section 1927 sanctions are only available "once a lawsuit has begun," and do not apply to an initial pleading. *Keegan*, 78 F.3d at 435. Moreover, district courts are entitled to "substantial leeway" when deciding whether sanctions are warranted pursuant to § 1927. *Haynes v. City &*

James C. Mahan
U.S. District Judge

- 4 -

*Cty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012); *see also Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).

### b. Local Rule 54-14(b)(3)

Local Rule 54-14(b)(3) specifically identifies the information that a party must submit to a trial court in this district for the court's consideration of a motion for attorneys' fees. These thirteen items are as follows:

> (A) The results obtained and the amount involved; (B) The time and labor required; (C) The novelty and difficulty of the questions involved; (D) The skill requisite to perform the legal service properly; (E) The preclusion of other employment by the attorney due to acceptance of the case; (F) The customary fee; (G) Whether the fee is fixed or contingent; (H) The time limitations imposed by the client or the circumstances; (I) The experience, reputation, and ability of the attorney(s); (J) The undesirability of the case, if any; (K) The nature and length of the professional relationship with the client; (L) Awards in similar cases; and (M) Any other information the court may request.

LR 54-14(b)(3).

Information regarding reasonable attorneys' fees is based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.* "The district court . . . should exclude from this initial fee calculation hours that were 'not reasonably expended.'" *Id.* at 433–34. Thus, the "court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Bus. Factors, Inc.*, 897 F. Supp. 458, 460–61 (D. Nev. 1995).

After calculating the lodestar amount, the court can further adjust that figure by considering the factors laid out in Kerr, which materially mirror Local Rule 54-14. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016); LR 54-14.

. . .

. . .

. . .

. . .

## III. Discussion

Importantly, the court has already found that Crocs is entitled to sanctions in the form of attorneys' fees pursuant to 28 U.S.C. § 1927 in its previous order on Crocs' first motion for sanctions:

> However, § 1927 does not provide sanctions for *initial filings* made in bad faith. 28 U.S.C. § 1927; *see also Blas*, 792 F.2d at 860 ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument . . . or argues a meritorious claim for the purpose of harassing an opponent."). Even though it was anticipatory, plaintiffs may not be sanctioned under § 1927 for merely filing their Nevada declaratory judgment action because it was the initial filing in this action. *See Blas*, 792 F.2d at 860. Yet, they may be sanctioned under § 1927 for actions taken subsequent to filing that multiplied the proceedings "unreasonably and vexatiously." *Id.*
>
> Here, it appears that plaintiffs submitted their initial filing with this court as a bargaining chip, especially considering plaintiffs' communication to Crocs wherein Dawgs' attorney seemed to offer to withdraw this suit while asking Crocs to agree to request specific judges in its Colorado motion. (ECF No. 12-2 at 2). Plaintiffs subsequently filed a response in Nevada to defendant's motion to dismiss and filed a plan for discovery, both of which are sanctionable because they vexatiously multiplied litigation. *See China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, No. CV 02-5493 LGB JWJX, 2003 WL 21982477, at *13 (C.D. Cal. Mar. 12, 2003) ("[T]he [c]ourt concludes that in opposing [p]laintiff's motion to dismiss or transfer the New York Action, [d]efendant knowingly raised a frivolous argument. Such conduct subjects [d]efendant to sanctions under 28 U.S.C. § 1927.").

(ECF No. 41 at 6).

Indeed, the sole reason for the court's denial of Crocs' first motion for sanctions pursuant to § 1927 was Crocs' failure to adequately discuss the "lodestar" factors. *Id.* at 9. Now that Crocs has supplemented its discussion of those factors, the court can address the underlying renewed motion for sanctions. As neither Dawgs nor DDD filed a response to Crocs' renewed motion, the court will analyze the "lodestar" factors as they pertain to this case without the benefit of an articulated opposition by plaintiffs.

*a. Calculation of "reasonable fees"*

The first task the court must undertake is to determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "The district court . . . should exclude from this initial fee calculation hours that were 'not reasonably expended.'" *Id.* at 433–34. Crocs seeks attorneys' fees in the amount of

$12,219.01 for a total of 24 hours of work performed by three attorneys who worked on this case. (ECF No. 64 at 3).

As Crocs notes in its motion, the fees requested exclude a substantial portion of the work performed by Crocs' attorneys in this case. (ECF No. 64 at 4). Indeed, Crocs has not requested fees for time spent "negotiating a discovery schedule, meeting and conferring with opposing counsel, drafting Crocs' initial disclosures, and engaging in ministerial tasks related to case management." *Id.* Instead, Crocs' seeks attorneys' fees for time spent drafting Crocs' motion to dismiss (and reply in support thereof), and its motion to stay discovery. *Id.* at 3.

Moreover, the hourly billing rates for the three attorneys assigned to the case range from $490.00 to $535.50, which courts in this district have previously held to be reasonable for cases like these. *See, e.g., Bird-B-Gone, Inc. v. Haierc Indus. Co.*, No. 2:18-cv-00819-RJC-NJK, 2018 WL 4682320, at *5 (D. Nev. Sept. 28, 2018); *SATA GmbH & Co. KG v. NingBo Genin Indus. Co.*, No. 2:16-cv-02546-JAD-GWF, 2018 WL 1796296, at *2 (D. Nev. Apr. 16, 2018).

The court similarly finds that Crocs' request for attorneys' fees at the aforementioned rates for 24 hours' worth of work in this case is reasonable. Nevertheless, the court must consider the second step in this analysis: the Rule 54-14 factors. *See* LR 54-14(b)(3).

*i. The results obtained and the amount involved*

Crocs submits that it obtained the results it sought when plaintiffs voluntarily dismissed this case on December 6, 2016. (ECF No. 64 at 4). Crocs also notes that it is only requesting a portion of the attorneys' fees that Crocs incurred in its defense of this lawsuit. *Id.* Accordingly, the "amount involved" is reasonable in light of the length of this litigation and the results achieved.

*ii. The time and labor required*

Crocs asserts that it is only seeking fees on behalf of "individuals primarily responsible" for drafting motions pursuant to this litigation and is not seeking fees on behalf of "other attorneys who played a supporting or supervisory role in those efforts." *Id.* at 3–4. Indeed, Crocs' is requesting fees for a total of 24 hours' worth of work over the course of over two years of litigation in this case. *Id.* at 2. Crocs notes that its counsel was able to perform the work efficiently, given counsel's familiarity with the 10-year history of litigation between the parties. *Id.* at 4.

*iii. The novelty and difficulty of the questions involved*

Crocs asserts that, while the issues in this case were not novel, Crocs' attorneys "had to fully brief these issues and explain the background issues" to the court. *Id.* at 5.

*iv. The skill requisite to perform the legal service properly*

Again, Crocs notes that while the issues in this case were not particularly difficult or novel, it "took the skill and expertise of [Crocs'] attorneys to clearly and concisely present those issues in context, including to properly frame this case against the backdrop of the [parties'] litigation history." *Id.* This presentation included a proper explanation of the complex procedural history of litigation between the parties. *Id.*

*v. The preclusion of other employment by the attorney*

Although Crocs' attorneys were not precluded from other employment as a result of this litigation, "this action caused them to divert time and resources that could have been spent on other matters," such as Crocs' ongoing litigation with plaintiffs in Colorado and other fora. *Id.* at 6.

*vi. The customary fee*

Crocs seeks to recover fees for attorneys Sean Callagy (at a rate of $490.00 per hour), Lara Palanjian (at a rate of 497.20 per hour), and George Langendorf (at a rate of 535.50 per hour). *Id.* at 2.

In Crocs' declaration in support of its motion, it notes that Mr. Callagy is currently a partner in the San Francisco office of Arnold & Porter, and that the rate requested for his time represents a "substantial discount from his standard rate." (ECF No. 65-1 at 3). Additionally, Crocs notes that the rates requested for Ms. Palanjian and Mr. Langendorf also represent a discount from their standard rates, though not "substantial." *Id.* at 3-4.

Moreover, Crocs notes that these rates are consistent with those of other Las Vegas, Los Angeles, and San Francisco attorneys practicing in the intellectual property field. (ECF No. 64 at 6) (citing data from the American Intellectual Property Law Association and fees awarded in various District of Nevada cases).

. . .

. . .

James C. Mahan
U.S. District Judge

- 8 -

|   |   |
|---|---|
| 1 | *vii. Whether the fee is fixed or contingent* |
| 2 | Crocs submits that the fees requested are fixed fees that were, in fact, paid by Crocs to |
| 3 | Arnold & Porter for services rendered in this action. *Id.* at 8. |
| 4 | *viii. The time limitations imposed by the client or the circumstances* |
| 5 | Crocs asserts that it was bound by the Federal Rules of Civil Procedure and the district's |
| 6 | local rules in responding to plaintiff's complaint and filing its various motions. *Id.* |
| 7 | *ix. The experience, reputation, and ability of the attorneys* |
| 8 | Crocs submits that, as of 2016, Mr. Callagy and Mr. Langendorf each had approximately |
| 9 | seven years of intellectual property and complex litigation experience. *Id.* at 9. Additionally, Ms. |
| 10 | Palanjian had approximately four years of intellectual property and complex litigation experience. |
| 11 | *Id.* Notably, Mr. Callagy and Ms. Palanjian each held clerkships prior to joining Arnold & Porter. |
| 12 | *Id.* |
| 13 | *x. The undesirability of the case, if any* |
| 14 | Crocs asserts (and the court agrees) that this factor is not applicable. (ECF No. 64 at 9). |
| 15 | *xi. The nature and length of the professional relationship with the client* |
| 16 | Mr. Callagy and Mr. Langendorf have represented Crocs since 2014 and 2016, |
| 17 | respectively. *Id.* Ms. Palanjian represented Crocs from 2015 to 2017. *Id.* |
| 18 | *xii. Awards in similar cases* |
| 19 | Crocs cites a case from the Central District of California that is distinctly similar to the |
| 20 | instant case. *Id.* In *China Healthways*, a district court awarded attorneys' fees in the amount of |
| 21 | $35,705.08 for filing an anticipatory suit and for opposing a motion to dismiss and transfer. *See* |
| 22 | *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, 2003 U.S. Dist. LEXIS 16286, *6 (C.D. |
| 23 | Cal. Mar. 12, 2003). |
| 24 | Crocs notes that it "seeks to recover far less than what was awarded in *China Healthways*— |
| 25 | roughly one third of the amount found to be an appropriate sanction in that case." (ECF No. 64 at |
| 26 | 9). |
| 27 | *xiii. Any other information the court may request* |
| 28 | Crocs submits (and the court agrees) that this factor is not applicable. *Id.* |

    *b. Summary*

In light of the foregoing, the court holds that the attorneys' fees requested by Crocs are reasonable pursuant to the "lodestar" and Rule 54-14 factors. Moreover, Crocs' motion comports with all relevant Federal Rules of Civil Procedure, as well as this district's local rules. Accordingly, the court will award attorneys' fees in the amount of $12,219.01, to be paid jointly severally by plaintiffs U.S.A. Dawgs, Inc. and Double Diamond Distribution, Ltd.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Crocs, Inc.'s "notice of lifting of stay and request to renew motion for sanctions" (ECF No. 59) be, and the same hereby is, GRANTED.

The clerk of court is instructed to enter judgment in the amount of $12,219.01 in attorneys' fees in favor of Crocs, Inc., to be paid jointly and severally by U.S.A. Dawgs, Inc. and Double Diamond Distribution, Ltd.

IT IS SO ORDERED.

 DATED February 11, 2019.

                                                                         /s/ James C. Mahan  
                                                      UNITED STATES DISTRICT JUDGE